# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-379-5 (ABJ)** |
| | : | |
| **DARTANYAN HAWKINS,** | : | |
| also known as "Shitty," | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Dartanyan HAWKINS be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## PROCEDURAL HISTORY AND RELEVANT FACTS

On February 8, 2024, a federal grand jury sitting in the District of Columbia returned a fifteen-count Superseding Indictment in Case Number 23-CR-379 charging six individuals with a series of criminal violations, all arising from their participation in the violent street crew known as "Push Dat Shit" or "PDS," in the Congress Heights neighborhood of Southeast Washington, D.C. Defendant is charged in Counts One and Two of the Indictment with Conspiracy to Distribute, and Possess with Intent to Distribute, More than 100 Kilograms of Marijuana and a Detectable Amount of Oxycodone; and Conspiracy to Use, Carry, and Possess Firearms, including Machineguns, During, in Relation to, and in Furtherance of Drug Trafficking, respectively. Defendant, who had been a fugitive since his Indictment, was arrested on April 9, 2024.

**ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

1.      **The United States' Bases for Detention**

HAWKINS is eligible for pretrial detention under 18 U.S.C. §§ 3142(f)(1)(B) and 3142(f)(1)(E), because Count Two charges a Firearms offense which carries a maximum sentence of life imprisonment. HAWKINS is also eligible for pretrial detention under 18 U.S.C. § 3142(f)(1)(C) because Count One charges a Controlled Substances Act offense which carries a maximum sentence in excess of ten years.  Pursuant to 18 U.S.C. § 3142(e)(3)(A), Count One also carries a rebuttable presumption in favor of pretrial detention. The rebuttable presumption "'operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" Id. at 124-25 (quoting United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); see also United States v. Portes, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present evidence to rebut the presumption. United States v. Lee, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

Moreover, even if Defendant presents evidence to rebut the presumption, the presumption does not disappear entirely. Id. at 125 (citing United States v. Ali, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.'" Id. (quoting United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

**2.     The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.     The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.

The co-defendants charged in Case Number 23-CR-379 (ABJ), along with the co-defendants charged in Case Number 22-CR-303 (ABJ) worked together to sell controlled

substances within territory that they controlled  In order to protect themselves, their drugs, their cash, and their drug-dealing territory, the co-conspirators agreed to discharge, brandish, use, carry, and possess firearms – including machineguns during, in relation to, and in furtherance of their drug trafficking offenses.

Specifically, the co-conspirators brandished firearms to discourage rivals from entering their drug-dealing territory and discharged firearms to defend their drug-dealing territory from rivals who entered their drug-dealing territory without permission. The co-conspirators also discharged firearms within their rivals' drug-dealing territory as retribution for the rivals' intrusion into the co-conspirators' drug-dealing territory. The co-conspirators drove through their rivals' territory and discharged firearms intending to kill, injure, or intimidate the rivals – an act they referred to as "spinning the block." The Indictment charges multiple incidents of such conduct.

In support of this conspiracy, CO-CONSPIRATOR 1 built and assembled both semi-automatic and fully automatic AR-Pistols from "kits" that he purchased through online retailers. Once the AR-Pistols were built and assembled, CO-CONSPIRATOR 1 sold them to the co-conspirators. Most of the AR-Pistols were delivered directly to Eugene HILL, also known as "Geno," or "Cheese," who re-distributed them within the conspiracy, but CO-CONSPIRATOR 1 also sold AR-Pistols directly to other persons, including Broadus DANIELS, also known as "Wardy."  Both HILL and DANIELS are charged in Case Number 22-CR-303 (ABJ).

The co-conspirators maintained "trap houses" within their drug trafficking territory and used those "trap houses" to store both drugs and firearms, including handguns, rifles, and AR-Pistols built and assembled by CO-CONSPIRATOR 1. The co-conspirators stored firearms in "trap houses" in order to ensure that there were always firearms on hand whenever co-conspirators needed a firearm to protect themselves, their money, their drugs, or their drug trafficking territory.

As charged in the Indictment, HAWKINS was an integral part of the conspiracy to distribute both marijuana and oxycodone for more than six years. During the course of the conspiracy HAWKINS rose from the ranks of a street-level dealer to assume a "mid-level" status within the crew – buying marijuana and oxycodone in bulk and supplying those substances to street-level dealers for a profit rather, than selling them on the street himself. HAWKINS was also entrusted to operate the "trap house" maintained by HILL and Andre WILLIS, also known as "Boogie," on their behalf.

WILLIS, who is also charged in Case Number 22-CR-303, was the crew's primary source of marijuana supply – supplying approximately twenty pounds per week for re-distribution through the crew. HAWKINS often served as WILLIS' courier, transporting bulk marijuana from WILLIS's source to WILLIS himself, until WILLIS' arrest in April 2023. Following WILLIS' arrest, HAWKINS took on a larger role within the conspiracy – effectively filling the gap left behind in WILLIS' absence.

The United States' evidence at trial will include more than one terabyte of digital evidence – most of which consists of electronic messages, photos, and videos sent between the co-conspirators. A sampling of HAWKINS' interactions with law enforcement and communications demonstrating his participation in the charged conspiracies follows.

> ➤ *HAWKINS (BLUE) offers to trade two Glock handguns to DANIELS (Green) in exchange for an AR-Pistol Machinegun assembled by Co-Conspirator 1*





Yea wya

9/29/2019 3:36:08 PM(UTC+0)

…



Let me give you the 21

9/29/2019 4:12:37 PM(UTC+0)



Nah Iont Want That

9/29/2019 5:31:36 PM(UTC+0)

…

Want Me Bring It Up There

9/29/2019 6:05:57 PM(UTC+0)



Yea soon as I get rite there & you send you the pics & you like the joints it's a go

9/29/2019 6:06:34 PM(UTC+0)

Ite

9/29/2019 6:10:38 PM(UTC+0)

29 & 21

9/29/2019 8:01:53 PM(UTC+0)

Wats Tha Addy

9/29/2019 8:16:23 PM(UTC+0)

That same day, DANIELS sent a picture of the AR-Pistol machinegun he was selling to another co-conspirator. Through the investigation, we know that Daniels purchased this machinegun from CO-CONSPIRATOR 1 on August 9, 2019.



➢ *HAWKINS (blue) discusses the price and quality of marijuana that "Luv" has for sale with a Co-Conspirator on February 27, 2020*





It was cool 275

2/27/2020 4:39:03 AM(UTC+0)



Ohh fuck No Who you said had that shit luv

2/27/2020 4:39:20 AM(UTC+0)



Yeah

2/27/2020 4:39:35 AM(UTC+0)

➢ *HAWKINS has one pound of marijuana for a co-conspirator at Andre Willis' trap house on March 15, 2020*



reel share
Come to boogie house I got a ho for 7 str8 gas

3/15/2020 12:19:57 AM(UTC+0)



You said ho

3/15/2020 12:24:32 AM(UTC+0)



Hp

3/15/2020 12:24:43 AM(UTC+0)

I meant I got a whole bag for you to

3/15/2020 12:24:52 AM(UTC+0)

➢ **_HAWKINS (BLUE) has Oxycodone and Marijuana for a Co-Conspirator on April 24, 2020_**



You got perks and rapper

4/24/2020 1:28:05 AM(UTC+0)



➤ **HAWKINS has Oxycodone for Christopher BROADY on February 17, 2022**



➤ **HAWKINS has multiple pounds of marijuana for Christopher BROADY on March 16, 2022**





> ➤ **HAWKINS won't "break down" a pound of marijuana for a co-conspirator but Emmanuel REID will on February 7, 2023**







E got it right here just letting you know

Status: Read

2/7/2023 11:11:10 PM(UTC+0)

➢ **HAWKINS has ten pounds of marijuana for sale fo4r $3,500 on March 7, 2023**



got 10 bags for 3500 for u

Status: Read

3/7/2023 3:32:57 PM(UTC+0)

➢ **WILLIS (Green) tells HAWKINS to purchase multiple one-pound bags of marijuana for him on March 8, 2023.**



Get some bags for me

Status: Sent

3/8/2023 2:23:41 PM(UTC-5)

➢ *HAWKINS and two other men arrested with twenty-five pounds of marijuana and a handgun on March 11, 2023.*

Three days after Willis instructed HAWKINS to "get some bags for me," MPD Officers were conducting a patrol for firearms interdiction in front of 2752 Shipley Terrace, Southeast (an apartment complex adjacent to Willis' residence at the time). At approximately 4:15 p.m. Officers drove into the parking lot and observed Carl Willis standing next to a parked Honda Accord and talking to a man seated in the Accord's driver seat. Both men noticed the police vehicle and Willis backed away from the Honda as the driver, later identified as HAWKINS, rolled up his window – at which time officers were able to observe that the window tint was visibly above the legal limit. Willis then walked away from the Honda and was holding a white, plastic trash bag.

Multiple MPD officers approached Willis and greeted him. When greeted by officers, Willis told them words to the effect of, "All I got on me is weed," and gestured with the trash bag. Willis then said, "It is six pounds.". Officers could see what looked like a heat-sealed bag of marijuana through the open the hole in the top of the bag, and placed Willis under arrest. A subsequent search of the trash bag revealed six, one-pound bags of marijuana. A small portion of the green leafy substance field tested positive for THC – the primary, psychoactive compound in marijuana.



At the same time, multiple MPD officers approached the parked Honda Accord where Willis was previously standing. Officers asked HAWKINS to roll down the driver's window and, while that was happening, additional officers walked around to the passenger side of the Honda and saw a man later identified as Jimonte Carter sitting in the front passenger seat. Officers were able to look through the passenger door window, which was partially rolled down, and could see a heat-sealed bag under Carter's right foot.

HAWKINS and Carter were ordered out of the Honda and placed under arrest for possession with intent to distribute a marijuana. Search incident to arrest, officers seized $500 in United States Currency from HAWKINS' person.  A search of the Honda for additional marijuana revealed 16 more heat sealed bags of marijuana, whose packaging were consistent in appearance to the marijuana Willis had in the trash bag. In total, officers seized 6.6 pounds of marijuana from Carl Willis and 19.3 pounds of marijuana from the passenger compartment of the Honda.

Attached below are photographs of the marijuana seized from the Honda, as well as a picture of HAWKINS after he was placed under arrest:



Officers opened the glove box of the Honda and found a black Glock, Model 23, .40 caliber semi-automatic handgun, bearing serial number MFX936, which was seized by officers.



> *HAWKINS (BLUE) refers a marijuana customer to WILLIS March 18, 2023.*





➢ **HAWKINS (BLUE) tells WILLIS to collect a co-conspirator's marijuana payment and directs him to pick up bags of "candy plum" marijuana – the same kind that Emmanuel REID bought – on March 20, 2023.**



Go get Fredo money

Status: Read

3/20/2023 2:28:53 PM(UTC-4)



I was on the phone with him

Status: Sent

3/20/2023 2:29:03 PM(UTC-4)

What's the name of them joints

Status: Sent

3/20/2023 2:29:47 PM(UTC-4)



I forgot I think candy plum or some shit he going give it to you

Status: Read

3/20/2023 2:30:27 PM(UTC-4)

I told him give you the shit he just gave me & Eman

Status: Read

3/20/2023 2:30:56 PM(UTC-4)

➢ *HAWKINS confirms that WILLIS wants all 10 pounds of Candy Plum marijuana on March 22, 2023*



You want all 10 of the candy plum right

Status: Read

3/22/2023 3:36:23 PM(UTC-4)

Source Info:

➢ *MPD seizes three pounds of Marijuana from HAWKINS and another man on April 30, 2023*

On April 30, 2023, MPD Officers were on routine patrol in the parking lot of the building containing 2758 Shipley Terrace, Southeast, with their Body Worn Cameras ("BWC") activated. This address is within the same apartment building complex where MPD Officers encountered HAWKINS six weeks prior, on March 11, 2023.

Officers observed multiple subjects congregating in front 2758 Shipley Terrace. The subjects appeared to be concealing themselves and reaching behind a row of bushes out of view of officers. As the Officers approached the premises, an individual Carl Willis approached the Officers and began engaging them in conversation, stating he lived there, and the police had no right to harass him. Attached below, on the left, is a still picture of Carl Willis captured on MPD BWC on April 30, 2023. Attached to the right of that picture is a still picture of Willis after he was placed under arrest on March 11, 2023.

 

HAWKINS was standing behind Carl Willis. Attached below, on the left, is a still picture of HAWKINS captured on MPD BWC on April 30, 2023.  Attached to the right of that picture is a still picture of HAWKINS after he was placed under arrest on March 11, 2023.

 

Officers investigated further and observed a black bag, open at the top, with multiple clear, plastic bags of marijuana in plain view. The amount of marijuana visibly appeared to be greater than 2 ounces in weight. Officers asked repeatedly asked if any of the individuals present owned the bag or were claiming ownership of the bag, and none of them said the bag was theirs. Officers seized the listed drugs which weighed approximately 3.2 pounds. Attached below is a picture of the marijuana with the black bag on the right:



➢ *HAWKINS has marijuana for sale at $1,200 per pound on August 4, 2023*



### B.     The Weight of the Evidence Against the Defendant Favors Pretrial Detention

The evidence of both HAWKINS' guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention.

The United States' trial evidence will include a substantial volume of seized drugs and firearms, electronic messages, photographs, videos, and the testimony of numerous eyewitnesses. However, it is important to note that HAWKINS' longstanding participation in both of the charged conspiracies *could* be proven exclusively through his own words, as communicated to his co-conspirators on his cellular telephone.

### C.     The Defendant's History and Characteristics Weigh in Favor of Detention

HAWKINS' History and Characteristics also weigh in favor of pretrial detention.

As noted in the Pretrial Services Report, HAWKINS has three criminal convictions: Second Degree Theft in D.C. Superior Court Case 2014 CMD 021820, Petit Larceny[1] in Fairfax,

---

[1] According to Defendant's NCIC report, he was originally charged with Grand Larceny, but pled guilty to a reduced charge.

Virginia Case GC13176931, and Providing False information to a Law Enforcement Officer in Fairfax, Virginia Case GC13176936.[2]

In addition to those convictions, and his interaction with MPD on April 30, 2023, HAWKINS' arrest record is as follows.

| Date | Jurisdiction | Charge | Result |
|------|-------------|--------|--------|
| 12/14/12 | Washington, D.C. | Unauthorized Use of Vehicle Leaving Scene of Accident Reckless Driving | Nolle |
| 11/1/13 | Washington, D.C. | Unauthorized Use of Vehicle Fleeing Law Enforcement x 2 | Dismissed |
| 8/10/14 | Washington, D.C. | Simple Assault | Dismissed |
| 5/19/16 | Washington, D.C. | Receiving Stolen Property | No Papered |
| 12/28/16 | Washington, D.C. | Unlawful Possession of a Firearm Unlawful Possession of a Large Capacity Magazine Possession of Unregistered Ammunition | No Papered |
| 10/22/19 | Washington, D.C. | Unlawful Entry – Private Property | Nolle Diversion |
| 11/23/19 | Washington, D.C. | Soliciting Prostitution | Nolle |
| 3/11/23 | Washington, D.C. | Possession With Intent to Distribute Marijuana | No Papered |

### D.   The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination"

---

[2] It appears that the Fairfax convictions resulted from a single incident, and both were resolved on the same day.

about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

Here, the articulable threat posed by HAWKINS is that he will continue to engage in the distribution of marijuana and oxycodone while armed.  Even without the obvious dangerousness of a firearm, the distribution of highly addictive substances such as oxycodone pose a substantial danger to the community. Compounding that danger is the fact that HAWKINS has an established a track record of distributing controlled substances from a residence, or "trap house," using a cellular telephone to conduct business. Though the Pretrial Services Agency could monitor whether o HAWKINS remained in a specific location they could not monitor his use of electronic devices and a prohibition against the use of such devices could not reasonably be enforced.

## CONCLUSION

HAWKINS is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(1)(E). There is a rebuttable presumption in favor of pretrial detention in this case pursuant to 18 U.S.C. § 3142(e)(3(A). Even if HAWKINS could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of detention, and HAWKINS poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that Dartanyan HAWKINS be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/  James B. Nelson
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel on April 11, 2024.


By:      */s/ James B. Nelson*
         JAMES B. NELSON
         Assistant United States Attorney